MARIO MERCADO E HIJOS, demandante y apelante, *v.* JUNTA
DE SALARIO MÍNIMO, SUSTITUÍDA POR EL HON. COMISIO-
NADO DEL TRABAJO DE PUERTO RICO, demandada y ape-
lada.

Número 10667.

*Sometido:* 6 de mayo de 1953. *Resuelto:* 18 de junio de 1953.

*Pedro M. Porrata, Pedro E. Muñiz Ramos* y *Luis Torres,* abo-
gados de la apelante; *Joaquín Gallart Mendía,* abogado del
Departamento del Trabajo y a su vez de la apelada.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

En una acción sobre sentencia declaratoria interpuesta por la sociedad civil agrícola, Mario Mercado e Hijos contra la Junta de Salario Mínimo, solicitó la demandante del tribunal que declarase que el Decreto Mandatorio núm. 3, "Fijando Salarios Mínimos, Horas Máximas de Labor y Condiciones de Trabajo que Deberán Prevalecer en la Industria del Azúcar en Puerto Rico," promulgado el 27 de febrero de 1943, no cubre a los taladores de pastos ni a los obreros dedicados al desmonte de pastos.

Contestó la Junta demandada y luego las partes sometieron el caso al tribunal a quo para su resolución mediante una estipulación que en lo esencial lee así:

"2. Que se trata en este caso de una *sentencia declaratoria* que la Sociedad Civil Agrícola Mario Mercado e Hijos estableció contra la Junta de Salario Mínimo de Puerto Rico, hoy sustituída por el Comisionado del Trabajo, en la que se solicita que este Honorable Tribunal dictamine que el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo, en vigor desde abril 27 de 1943 y que fija salarios mínimos, horas máximas de labor y condiciones que deberán prevalecer en la industria de la azúcar en Puerto Rico, no es de aplicación en su fase agrícola a los obreros de la demandante que trabajan en el cultivo, talado, conservación, desmonte y limpieza de pastos que utiliza la querellante para pastar ganado que luego dedica a arrastrar carros y otros trabajos relacionados con la industria azucarera.

"3. Que para la fecha en que se radicó en corte este recurso de *sentencia declaratoria* la demandante pagaba y continúa pagando a los obreros dedicados a las referidas labores en dichos pastos un salario inferior a $1.50 por 8 horas de trabajo, que es el salario mínimo que fija el Decreto núm. 3 para toda clase de trabajo *no clasificado* en la fase agrícola de la industria de la azúcar, y en fincas que no son pequeñas ni del interior.

"4. Que es el criterio de la parte demandada que los obreros de la demandante que se dedican al cultivo, talado, conservación, limpieza y desmonte de pastos que se usan para pastar ganado que a su vez es utilizado para arrastrar carros y otras labores relacionadas con la industria de la azúcar, están cubier-

tos por el Decreto núm. 3 de la Junta de Salario Mínimo y que dichos obreros deben recibir el salario que el mismo dispone para las ocupaciones no clasificadas en la fase agrícola.

"5. Que las partes entienden que la única cuestión a resolverse en este recurso de sentencia declaratoria es la de si los obreros ya mencionados están o no cubiertos por el Decreto núm. 3 de la Junta de Salario Mínimo de Puerto Rico y someten el caso a base de esta estipulación con la petición al Tribunal de que se conceda un término de 15 días a ambas partes para someter *memoranda* en apoyo de sus respectivas contenciones."

El tribunal a quo dictó sentencia declarando "Que los obreros que han estado trabajando y continúan trabajando con la demandante en labores de cultivo, talado, conservación, limpieza y desmonte de pastos que ha usado y usa para pastar ganado que a su vez ha utilizado y utiliza para arrastrar carros y otras labores relacionadas con la industria del azúcar son obreros cuyas ocupaciones corresponden a la fase agrícola de la industria azucarera cubierta por el Decreto Mandatorio número 3 de la Junta de Salario Mínimo de Puerto Rico y que siendo dichas ocupaciones de las no clasificadas en el artículo A, sección 1 de dicho Decreto, estos obreros tienen derecho a percibir el salario que fija el Decreto en la fase agrícola para las ocupaciones no clasificadas."

En apelación la demandante Mario Mercado e Hijos alega que el tribunal sentenciador cometió error al hacer tal declaración.

En su apartado C, inciso 3, el Decreto Mandatorio núm. 3 define la industria del azúcar en la siguiente forma:

"3. Definición de la Industria.—La industria del azúcar a la cual se aplica este Decreto se define como sigue:

"La producción de caña de azúcar en su aspecto agrícola e industrial incluyendo, pero sin que se entienda esto como una limitación,

(a) *Fase Agrícola:* La preparación del terreno, la siembra, cultivo, recolección, transporte de caña cuando sea hecho por agricultores, y cualquier otra operación de naturaleza agrícola; y

(*b*) *Fase Industrial:* La transportación de la caña cuando sea hecha por centrales azucareras, el pesado, la preparación y molienda de la caña, y la elaboración, manipulación, empaque, pesado y almacenaje del azúcar y cualquier otra operación relacionada con el aspecto industrial de la manufactura de azúcar desde que la caña es pesada en la romana de la central hasta que el azúcar es removida de los almacenes de ésta; *Disponiéndose,* que la transportación del azúcar, cuando sea hecha por las centrales, se considerará como parte de la fase industrial."

En cuanto a la fase agrícola, que es la envuelta en este recurso, el Decreto dispone lo siguiente:

"A.—Fase Agrícola

1. Salarios Mínimos.—Todo patrono que emplee trabajadores en la fase agrícola de la industria del azúcar vendrá obligado a pagarle a los mismos por lo menos a razón de los siguientes tipos de salarios para las distintas ocupaciones o trabajos detallados a continuación por las primeras ocho (8) horas de trabajo realizadas en cualquier período de veinticuatro (24) horas, con excepción de aquéllos que trabajen como zanjeros, limpiadores de zanjas, chapodeadores y limpiadores de caños con machete y hacheros limpiando traviesas dentro del agua, y regadores, en sistemas de riego que no son por gravedad, cuando trabajan dentro del agua, a los cuales el tipo de salario mínimo diario aplicable será por las primeras siete (7) horas de trabajo realizado durante cualquier período de veinticuatro (24) horas:

| "Ocupación | "Tipos para Fincas no Pequeñas o que no sean del Interior | "Tipos para Fincas Pequeñas o del Interior |
|---|---|---|
| "(*a*) Toda clase de trabajo excepto los abajo clasificados | $1. 50 | $1. 40" |

Sostiene la apelante que la anterior disposición no cubre a los obreros que ella utiliza en el cultivo, talado, conservación, limpieza y desmonte de pastos que se usan para pastar ganado que a su vez es utilizado para arrastrar carros y otras labores relacionadas con la industria del azúcar.[1]

---

[1] La apelante es dueña de una central azucarera y se dedica a la siembra, cultivo y molienda de cañas de azúcar. Además se dedica a otras

No tiene razón. Sin estar limitado a ello, la fase agrícola incluye además de la preparación del terreno, la siembra, cultivo, recolección y transporte de caña cuando sea hecho por agricultores, y cualquier otra operación de naturaleza agrícola. La apelante admite que la labor realizada por el grupo de obreros mencionado en su demanda, es de naturaleza agrícola. Su contención es al efecto de que tales labores no caen dentro de la fase agrícola de la industria del azúcar, porque no tienen relación con la siembra y recolección de la caña. Sin embargo, se olvida la apelante de que la transportación de la caña cuando es hecha por agricultores, —y la apelante no niega que lo sea—cae dentro de la fase agrícola de la industria del azúcar y que desde sus comienzos esta industria viene utilizando carros arrastrados por bueyes para transportar cañas.(²) El propio Decreto reconoce esa realidad cuando fija salarios mínimos y otras condiciones de trabajo a los "llenadores de carros de caña" y a los "carreteros en recolección". Si la apelante utiliza el ganado que pasta en las fincas donde trabajan los obreros dedicados al cultivo, talado, etc. de pastos, para arrastrar carros de caña, no podría negarse que las labores de tales obreros son incidentales al transporte de la caña, operación ésta que por disposición expresa del Decreto cae dentro de la

---

actividades agrícolas. Sin embargo, en su demanda alegó específicamente lo siguiente:

"5. Que la demandante posee propiedades o fincas y terrenos baldíos, los cuales tala y desmonta, y luego los dedica a pastar el ganado cuyo ganado se utiliza para arrastrar carros y otros trabajos relacionados con la industria del azúcar.

"6. Que dedicados a las faenas de talar y desmontar montes para dedicarlos a pastos en la forma antes indicada, hay un grupo de obreros a quienes se les paga un promedio de un dollar diario por ocho horas de labor."

Por tanto, la controversia en este caso se limita a determinar si ese grupo de obreros está o no cubierto por el Decreto núm. 3.

(²) La apelante ha admitido, por lo menos, que el ganado que pasta en las fincas donde sus obreros trabajan en el cultivo, talado, conservación, desmonte y limpieza de pastos, lo dedica a arrastrar carros y otros trabajos relacionados con la industria del azúcar.

*fase agrícola* de la industria. Independientemente del aspecto del transporte de la caña, las labores de este grupo de obreros siempre serían incidentales a dicha fase agrícola. El Decreto no contempla incluir en esta fase de la industria únicamente a aquellos obreros que se dediquen a "la preparación del terreno, la siembra, cultivo, recolección, transporte de caña cuando sea hecha por agricultores, y cualquier otra operación de naturaleza agrícola", puesto que expresamente han sido incluídos en la fase agrícola otros obreros cuyas labores no son las especificadas anteriormente y que por el contrario, son de distinta naturaleza. Entre estos obreros se encuentran los *carpinteros, albañiles, mecánicos, pintores, electricistas, otros obreros de artes y oficios y sus ayudantes.* Apartado "A.—Fase Agrícola", inciso 1 (*f*) y (*g*) del Decreto. En verdad no encontramos diferencia fundamental, en lo que a su relación con la fase agrícola de la industria del azúcar respecta, entre el carpintero que fabrica o repara los carros y el obrero que cultiva la finca donde pasta el ganado que arrastra los carros. Por otro lado, la definición de la "fase agrícola", incluye, además de la preparación del terreno y la siembra, cultivo, recolección y transporte de caña, "*cualquier otra operación de naturaleza agrícola.*" (Bastardillas nuestras.) Este lenguaje es lo suficientemente amplio y abarcador para cubrir al grupo de obreros que la apelante utiliza en el cultivo, talado, conservación, limpieza y desmonte de pastos que usa para pastar ganado que a su vez es utilizado para arrastrar carros y otras labores relacionadas con la industria del azúcar.

*Debe, por tanto, confirmarse la sentencia apelada.*

Los Jueces Asociados Sres. Negrón Fernández, Ortiz y Belaval no intervinieron.